IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| RONALD H. MOEN, | ) | |
| | ) | Civil No. 02-10-JE |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STANLEY CZERNIAK, | ) | |
| | ) | FINDINGS AND RECOMMENDATION |
| Respondent. | ) | |

    Ruben L. Iniguez
    Assistant Federal Public Defender
    101 S.W. Main Street, Suite 1700
    Portland, Oregon 97204

        Attorney for Petitioner

    Hardy Myers
    Attorney General
    Douglas Y.S. Park
    Assistant Attorney General
    Department of Justice
    1162 Court Street NE
    Salem, Oregon 97310

        Attorneys for Respondent

///

JELDERKS, Magistrate Judge.

Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2254 seeking to challenge the constitutionality of his convictions for Aggravated Murder. For the reasons which follow, the Second Amended Petition for Writ of Habeas Corpus (#32) should be denied, and this case should be dismissed with prejudice.

## BACKGROUND

On March 14, 1986, the bodies of petitioner's wife, Judith Moen, and her mother, Hazel Chatfield, were discovered in Chatfield's residence. The police investigation led to petitioner's arrest, and on June 27, 1986, petitioner was indicted on two counts of Aggravated Murder with a Firearm. Respondent's Exhibit 103.

Petitioner proceeded to a jury trial where, relevant to this habeas corpus action, the State's case included evidence of Chatfield's statements to her physician during a medical visit:

> Dr. Daniel Mulkey testified that he treated Hazel Chatfield from August 1985 up to and including visits on February 11 and March 11, 1986. During the latter two visits, Mrs. Chatfield complained of depression and despondency since her daughter and son-in-law [petitioner] had moved into her home. Mrs. Chatfield appeared agitated, anxious, nervous, very tearful, and crying. Dr. Mulkey attempted to treat her for a potentially fatal lesion, but because of her situation at home, was unable to convince her that she needed treatment. Dr. Mulkey further testified that Mrs. Chatfield told him that she was upset about her daughter and son-in-law, that her son-in-law had been physically abusive to her daughter, and that "she felt he might kill them both." Dr. Mulkey diagnosed her

> condition as situational depression and recommended that [petitioner] be removed from the home.

State v. Moen, 309 Or. 45, 47-49, 786 P.2d 111 (1990).

The jury convicted petitioner of both counts of Aggravated Murder and initially sentenced him to death. Respondent's Exhibit 101-A. On direct appeal, the Oregon Supreme Court vacated petitioner's death sentence when it determined that the trial court failed to instruct the jury regarding mitigation evidence. State v. Moen, 309 Or. 45, 786 P.2d 111 (1990); Respondent's Exhibit 106.

On remand, the State elected not to seek the death penalty, and petitioner was sentenced to life in prison with a 30-year minimum term. Respondent's Exhibit 101-A, pp. 2-3. Petitioner directly appealed his new sentence, but the Oregon Court of Appeals affirmed the trial court without opinion, and the Oregon Supreme Court denied review. State v. Moen, 110 Or.App. 372, 822 P.2d 763, rev. denied, 312 Or. 677 (1992).

Petitioner next filed for post-conviction relief ("PCR") in the Marion County Circuit Court, but the PCR trial court denied relief on all of petitioner's claims. Respondent's Exhibits 146-148. The Oregon Court of Appeals affirmed the lower court without a written opinion, and the Oregon Supreme Court denied review. Moen v. Maass, 170 Or.App. 439, 13 P.3d 101 (2000), rev. denied, 331 Or. 583, 19 P.3d 335 (2001).

3 - FINDINGS AND RECOMMENDATION

Petitioner filed this federal habeas corpus action with a *pro se* Petition on January 2, 2002. With the assistance of counsel, petitioner has twice amended his Petition to state 11 grounds for relief. Because those claims are adequately stated in the parties' briefing, they are not reiterated here. Respondent asks the court to deny relief on all claims because: (1) with the possible exception of petitioner's Ground Five Confrontation Clause claim, all grounds for relief are procedurally defaulted; and (2) the Oregon state court decisions are neither contrary to, nor unreasonable applications of, clearly established federal law.

## DISCUSSION

### I. Petitioner's Unargued Claims.

In his Memorandum in Support (#77) of the Second Amended Petition, petitioner pursues the following three claims:

   (1) The introduction of Hazel Chatfield's hearsay statements through the testimony of Dr. Mulkey violated petitioner's Sixth Amendment right to Confrontation;

   (2) Petitioner was not able to aid and assist his attorneys, and the trial court violated his right to due process when it failed to provide him with an independent defense expert on the issue of competency; and

   (3) The State's failure to correct the false testimony given by its key witness, Kenneth Skurlock, violated petitioner's right to due process.

Petitioner does not provide argument in support of several claims raised in his Second Amended Petition, nor does he attempt to refute the State's arguments in its Response that these claims do not entitle him to relief. The court has nevertheless reviewed

4 - FINDINGS AND RECOMMENDATION

petitioner's unargued claims and determined that they do not entitle him to relief. See 28 U.S.C. § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true.").

II. **Exhaustion and Procedural Default**.

Respondent asserts that none of the claims petitioner pursues in his supporting memorandum were fairly presented to Oregon's state courts.

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. Rose v. Lundy, 455 U.S. 509, 519 (1982). "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" Casey v. Moore 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting Vasquez v. Hillery, 474 U.S. 254, 257, (1986)). If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims were considered, the claims have not been fairly presented to the state courts and are therefore not

eligible for federal habeas corpus review. Castille v. Peoples, 489 U.S. 346, 351 (1989).

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Coleman v. Thompson, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. Gray v. Netherland, 518 U.S. 152, 162 (1996); Sawyer v. Whitley, 505 U.S. 333, 337 (1992); Murray v. Carrier, 477 U.S. 478, 485 (1986).

**A.   Ground One:   Sixth Amendment Right to Confrontation.**

Petitioner alleges that testimony introduced through Chatfield's doctor violated the Confrontation Clause. He characterizes Chatfield's statements to her doctor as testimonial, and asserts that under Crawford v. Washington, 124 S.Ct. 1354 (2004), before testimonial hearsay statements can be admitted at trial, the witness must be unavailable and the accused must have had a prior opportunity to cross examine the witness. The Ninth Circuit has held that Crawford establishes a new watershed rule of criminal procedure which applies retroactively to cases on

collateral review.  Bockting v. Bayer, 399 F.3d 1010, 1012-13 (9th Cir.), amended and reh'g denied, 408 F.3d 1127 (9th Cir. 2005).

Respondent argues that petitioner failed to fairly present this claim to Oregon's courts because Crawford was not decided until 16 years after petitioner submitted his initial Petition for Review to the Oregon Supreme Court during direct review. Petitioner asks the court for the opportunity, should the court deem his claim unexhausted, to hold this federal habeas case in abeyance while he returns to state court to present his Confrontation Claim to the state courts.

Because petitioner's Confrontation Claim lacks merit (as discussed later in this Opinion), the court need not decide whether petitioner fairly presented the claim to Oregon's state courts. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.").

**B.  Ground Two:   Petitioner's Competency.**

In his second ground for relief, petitioner asserts that he lacked the competency to aid and assist in his own defense, and that the trial court violated his right to due process when it failed to provide him with an independent defense expert to evaluate his competency.  Petitioner contends that he presented a competency claim during his direct appeal following his re-

sentencing, thereby fairly presenting his claims to Oregon's state courts.

In his counseled Appellant's Brief, petitioner presented the following claims to the Oregon Court of Appeals:

1.  Did the trial judge violate the defendant's Oregon and federal constitutional rights when the court denied defendant's recusal motion?

2.  Did the trial judge violate the defendant's Oregon and federal constitutional rights when the court denied defendant's motion to appoint different counsel?

3.  Did the trial judge violate the defendant's Oregon and federal constitutional rights when the court denied defendant's demurrer (penalty phase)?

Respondent's Exhibit 108-B, pp. 2-3. Nowhere in the Appellant's Brief did petitioner raise any issue related to his competency. Although petitioner attached various *pro se* handwritten motions from his trial to his Appellants Brief which, he argues, placed his competency at issue, he was required to present his claims within the Appellant's Brief itself. See Baldwin v. Reese, 541 U.S. 27, 32 (2004) ("ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material . . . that does so."); see also Castillo v. McFadden, 399 F.3d 993, 1000 (in order to exhaust, a petitioner must present his federal constitutional issue "within the four corners of his appellate briefing.").

8 - FINDINGS AND RECOMMENDATION

Even if the Oregon Court of Appeals could be expected to explore plaintiff's *pro se* trial court motions, the motions attached to the counseled Appellant's Brief did not identify the federal constitutional claims based on competency that petitioner raises here. Accordingly, petitioner failed to fairly present his competency claims to Oregon's state courts during direct appeal.

Petitioner contends that he also raised his competency claims during PCR. He filed an Amended PCR Petition containing thirteen claims. In his second claim, petitioner alleged that "[t]he Marion County Circuit Court improperly required plaintiff to proceed to trial despite his inability to fully comprehend the nature of the proceedings against him and assist his attorneys in their defense of him." Respondent's Exhibit 130, p. 3. The PCR trial court made the following factual findings:

> 4. Petitioner was evaluated for his ability to aid and assist in his own defense during his trial.
>
> 5. Petitioner failed to present credible evidence in this proceeding to support his claim that he was unable to aid and assist at his trial.

Respondent's Exhibit 146, p. 5.

The PCR trial court concluded that none of petitioner's federal constitutional rights had been violated. Id at 8. It also found, however, that:

> 5. Those issues which were raised on direct appeal or which could have been raised on direct cannot form a basis for post-conviction relief.

9 - FINDINGS AND RECOMMENDATION

> 6. Those issues which petitioner could reasonably have raised at the trial court level and did not raise at the trial court level have been waived.

Id at 9.

Respondent argues that, under Oregon law, petitioner could only have raised his competency claim during direct review, thus the PCR trial court denied this claim on procedural grounds, not on the merits. Although petitioner's claim regarding his competency would ordinarily be barred on collateral review,[1] the PCR trial court made specific findings regarding the merits of this claim. These findings, coupled with the PCR trial court's failure to explicitly state that it was denying relief on the competency claim on procedural grounds,[2] lead this court to conclude that petitioner presented his claim in a context in which the PCR trial court considered its merits.

Respondent next contends that petitioner did not present this claim to the Oregon Supreme Court in his Petition for Review. In his Petition for Review to the Oregon Supreme Court, petitioner presented the following questions:

---

[1] See Palmer v. State, 318 Or. 352, 354, 867 P.2d 1368 (1994) (subject to a few narrowly-drawn exceptions, a petitioner may not raise a claim in a state post-conviction proceeding which he could have raised during direct review).

[2] See Harris v. Reed, 489 U.S. 255, 263 (1989) (for a default to be based on a state procedural bar, a state court judgment must clearly rest on that procedural bar).

10 - FINDINGS AND RECOMMENDATION

> Whether the Court of Appeals correctly affirmed the decision of the post-conviction trial court refusing to relieve Petitioner's post-conviction attorney.
>
> Whether the Court of Appeals correctly affirmed the decision of the post-conviction trial court purposefully and deliberately denying Petitioner competent appointed counsel.
>
> Whether the Court of Appeals correctly affirmed the decision of the post-conviction trial court refusing Petitioner permission to file an amended Petition for Post-Conviction Relief.
>
> Whether the Court of Appeals correctly affirmed the decision of the post-conviction trial court denying Petitioner's request for post-conviction relief.

Respondent's Exhibit 183, p. 1.

None of these issues alerted the Oregon Supreme Court that petitioner was attempting to raise any federal claims based upon his alleged incompetency. Similarly, the Oregon Supreme Court would not have been alerted to any competency claims based on the "Rules of Law to Be Established" portion of the Petition for Review because they make no mention of a competency issue. Id. In fact, the only constitutional issue arguably before the Oregon Supreme Court was one relating to his right to counsel.

Although petitioner did attempt to incorporate his counseled Appellant's Brief and Supplemental *Pro Se* Appellant's Brief by reference in the "Reasons for Reversal," "Statement of Facts," and "Argument" portions of his Petition for Review, incorporation by reference is insufficient to exhaust a constitutional claim before a state supreme court. Baldwin, 541 U.S. at 30-32. Indeed, as the

11 - FINDINGS AND RECOMMENDATION

Supreme Court recognized in Baldwin, the Oregon Rules of Appellate Procedure "instruct[] litigants seeking discretionary review [in the Oregon Supreme Court] to identify clearly *in the petition itself* the legal questions presented, why those questions have special importance, a short statement of relevant facts, and the reasons for reversal, 'including appropriate authorities.'" Id at 31 (emphasis added). The U.S. Supreme Court does not view this task as a burdensome one. Id at 32.

The Oregon Supreme Court could only have discovered a competency claim by looking through the Petition for Review to the petitioner's briefing filed with the Oregon Court of Appeals. In order to find that this constitutes fair presentation, this court would not only have to disregard the Supreme Court's decision in Baldwin, but would also be forced to speculate that the Oregon Supreme Court does, in fact, look beyond a Petition for Review when asked to do so by a litigant. This court is neither willing to make such an assumption, nor to impose such a requirement on the state courts, especially in light of the clear requirements set forth in the Oregon Rules of Appellate Procedure for the filing of petitions for review.

For these reasons, the court finds that petitioner failed to fairly present the issue of his competency to the Oregon Supreme Court. As the time for doing so passed long ago, petitioner's Ground Two claim is procedurally defaulted.

C. **Ground Three: Prosecutorial Misconduct**.

In Ground Three, petitioner raises a claim of prosecutorial misconduct based on the State's failure to correct allegedly false testimony by one of its witnesses. This claim does not appear anywhere in the Petition for Review. See Respondent's Exhibit 183. While one of the questions presented in the Petition for Review was whether the Oregon Court of Appeals correctly affirmed the decision of the post-conviction trial court, this issue would not have alerted the Oregon Supreme Court that petitioner wished it to rule on a federal claim of prosecutorial misconduct.

As discussed in relation to petitioner's Ground Two claim, *supra*, the Oregon Supreme Court is not required to explore petitioner's underlying briefing to find which claims he may be attempting to raise. Accordingly, petitioner failed to fairly present this claim to the Oregon Supreme Court, and as he may no longer do so, it is procedurally defaulted.

III. **Fundamental Miscarriage of Justice Exception to Procedural Default**.

Petitioner argues that even if the court finds his competency claims in Ground Two to be procedurally defaulted, the default should be excused because compelling someone to stand trial when they are not competent to do so constitutes a fundamental miscarriage of justice or, in the alternative, a claim that is not susceptible to procedural default.

13 - FINDINGS AND RECOMMENDATION

In Schlup v. Delo, 513 U.S. 298 (1995), the Supreme Court addresses the process by which state prisoners may prove "actual innocence" so as to excuse a procedural default through the fundamental miscarriage of justice exception to procedural default. The Court explained that in order to be credible, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–-that was not presented at trial." Id. at 324; Downs v. Hoyt, 232 F.3d 1031, 1040 (9th Cir. 2000), cert. denied, 121 S.Ct. 1665 (2001). Ultimately, petitioner must prove that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. Schlup, 513 U.S. at 327; Bousley v. United States, 523 U.S. 614, 623 (1998); Downs, 232 F.3d at 1040.

Here, petitioner does not assert that he is actually innocent of Aggravated Murder. Instead, he submits that much like a person who is actually innocent of a crime, the miscarriage of justice exception should extend to a substantive claim of incompetence to stand trial. Petitioner has not cited, and the court is unable to find, any controlling authority which extends the fundamental miscarriage of justice exception to a prisoner who limits his allegation only to his own competency, but does not allege that he is actually innocent. Because petitioner has not presented new evidence demonstrating his innocence, he cannot invoke the

14 - FINDINGS AND RECOMMENDATION

fundamental miscarriage of justice exception. Accordingly, the default should not be excused.

**IV. Evidentiary Hearing**.

Petitioner also asks this court to conduct an evidentiary hearing to allow him to develop additional evidence to support his competency and prosecutorial misconduct claims. Because those claims are procedurally defaulted, an evidentiary hearing would not be helpful to petitioner.

**V. The Merits**.

   **A. Standard of Review**.

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are

15 - FINDINGS AND RECOMMENDATION

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. Id at 410. The state court's application of clearly established law must be objectively unreasonable. Id at 409.

When a state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal habeas court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law. Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). In such an instance, although the court independently reviews the record, it still defers to the state court's ultimate decision. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

**B. Analysis.**

In petitioner's sole remaining ground for relief, he alleges that the introduction of Hazel Chatfield's hearsay statements through the testimony of Dr. Mulkey violated his Sixth Amendment right to Confrontation. Although the Oregon Supreme Court denied

16 - FINDINGS AND RECOMMENDATION

relief on a confrontation claim during petitioner's automatic appeal following his death sentence, it did not have the opportunity to consider the specific claim raised in this proceeding. Accordingly, the court conducts an independent review of the record in examining the merits of petitioner's Ground One confrontation claim.

In all criminal prosecutions, the Sixth and Fourteenth Amendments guarantee the accused the right "to be confronted with the witnesses against him." U.S. Const., Amdt. 6; <u>Lilly v. Virginia</u>, 527 U.S. 116, 123 (1999). "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." <u>Davis v. Alaska</u>, 415 U.S. 308, 315-16 (1974). In <u>Crawford v. Washington</u>, the Supreme Court held that in criminal proceedings, "[t]estimonial statements of witnesses absent from trial [are admissible] only where the witness is unavailable, and only where the defendant has had a prior opportunity to cross-examine." 124 S.Ct. at 59. It is obvious that Chatfield was unavailable, and that petitioner did not have an opportunity to cross-examine her regarding her statements that she felt petitioner might kill her and her daughter. The court must therefore decide whether Chatfield's statements to Dr. Mulkey during her March 11, 1986 visit were "testimonial."

Statements are considered "testimonial" if they "were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use

17 - FINDINGS AND RECOMMENDATION

at a later trial. . . ." Crawford, 124 S.Ct. at 1364; Parle v. Runnels, 387 F.3d 1030, 1037 (9th Cir. 2004). While the Supreme Court left "for another day" a more comprehensive definition of "testimonial," it cited the following examples of statements which meet this definition: statements made at a preliminary hearing, a grand jury, a former trial, or during police interrogations. Crawford, 124 S.Ct. at 1374.

Petitioner admits that generic statements by a patient to a doctor do not appear to fit within the definition of "testimonial," but argues that the circumstances surrounding Chatfield's disclosure, and the nature of the fears she expressed, compel the conclusion that her statements were testimonial. Specifically, petitioner contends that: (1) Chatfield's statements triggered Dr. Mulkey's duty to report because he had reasonable cause to believe that a person at least 65 years old had suffered abuse;[3] (2) Mulkey understood the statements would be used in litigation because he did not record the statements in his file until he was informed, six days after his last meeting with her, that Chatfield had been murdered; and (3) Chatfield was aware that future litigation surrounding petitioner's behavior was likely because her daughter's past response regarding such behavior had been to involve the legal system.

---

[3] At the time of the murders, the reporting requirement was codified at ORS 410.630 (1985).

18 - FINDINGS AND RECOMMENDATION

Three days before her death, Chatfield visited Dr. Mulkey to treat a potentially fatal lesion, but her depression prevented him from doing so. When she indicated that she feared petitioner might kill her and her daughter, her statements were not made at a grand jury proceeding, preliminary hearing, a former trial, or during a police interrogation. A neutral observer would not have speculated that the statements would be used at a trial because, at that time, no crime had been committed.

Only after Chatfield was murdered did the testimonial value of her statements become apparent, thus prompting Dr. Mulkey to memorialize them. The fact that Dr. Mulkey, with the benefit of hindsight, belatedly memorialized these statements in anticipation of a criminal trial does not render the statements "testimonial" at the time they were made. Whether Dr. Mulkey had a duty to report physical abuse of an elder, or whether Chatfield's daughter had taken legal action against petitioner in the past would not bear upon an objective witness' interpretation of Chatfield's March 11, 1986 visit with Dr. Mulkey.

Because Chatfield's statements to her physician were not "testimonial" in nature, petitioner's <u>Crawford</u> claim is without merit. For this reason, even assuming petitioner has presented such a claim to the Oregon state courts, and further assuming those courts denied relief on his <u>Crawford</u> claim, such decisions would be neither contrary to, nor an unreasonable applications of, clearly established federal law.

## RECOMMENDATION

For the reasons identified above, the Second Amended Petition for Writ of Habeas Corpus (#32) should be DENIED, and Judgment should be entered DISMISSING this case, with prejudice.

## SCHEDULING ORDER

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issue, and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this  13th  day of February, 2006.

                         /s/ John Jelderks  
                         John Jelderks  
                         United States Magistrate Judge